UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 21-24070-CIV-MORENO

CITIBANK, N.A.,

        Petitioner,

vs.

CARLOS ADRIAN MOSQUERA,

        Respondent.
_____/

## ORDER GRANTING PETITIONER'S RENEWED MOTION FOR AN ANTI-SUIT INJUNCTION AND TO COMPEL ARBITRATION

    Respondent, Carlos Mosquera, was an employee of Petitioner Citibank, N.A., whose employment was terminated with a Separation Agreement and a severance package. In that Separation Agreement, and in other prior employment agreements with Citibank, Mosquera agreed to arbitrate issues regarding his employment or separation. Rather than adhere to this agreement, Mosquera filed a court case in Argentina relating to his severance even though his employment was here in Florida. Given the strong federal policy favoring arbitration, this Court finds that an anti-suit injunction enjoining the Argentine proceedings is appropriate as Mosquera cannot be allowed to "side-step" the agreement to arbitrate. Moreover, the Court finds that the substance of Mosquera's claims stemming from his separation from Citibank are clearly within the purview of the arbitration agreement. Accordingly, the Court grants an anti-suit injunction and compels arbitration of this matter.

    THIS CAUSE came before the Court upon Petitioner's Renewed Motion to Compel Anti-Suit Injunction, to Compel Arbitration, and for a Temporary Restraining Order **(D.E. 15)**.

THE COURT has considered the motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED as set forth in this Order. The Court notes that although the motion was served, the Respondent did not file a response in opposition. *See* S.D. Fla. L.R. 7.1(c)(3) (stating that a failure to file a response in opposition to the motion shall be grounds for granting the motion by default). In any event, the Court examined the issues and agrees with Petitioner.

## I. Background

Petitioner, Citibank, N.A. (CBNA), is a United States nationally chartered bank that employed the Respondent Carlos Adrian Mosquera from October 2014 to September 2019. On July 30, 2019, Petitioner sent Mosquera a separation agreement notifying him that effective September 28, 2019, his position would be eliminated. Mosquera signed the separation agreement on September 3, 2019, and he received separation benefits as follows: (1) a lump sum of $164,538.46 (less applicable taxes and withholdings) representing 46 weeks of his current annual base salary rate of $186,000, and (2) outplacement services. In exchange, Mosquera agreed to release Citi (including CBNA and its affiliates, subsidiaries, divisions and related business entities) from any and all controversies or claims arising out of or in connection with his employment and separation from Citi. He also agreed that "any and all disputes arising out of or relating in any way to the validity, interpretation, or enforcement" of the Separation Agreement "shall be resolved through binding arbitration."

In addition to the Separation Agreement, Mosquera agreed to arbitration in his "new hire" paperwork when he first joined CBNA. The paperwork includes the Employment Application, the U.S. Employee Handbook, Citi's Arbitration Policy, and Citi's Principles of Employment. Throughout his employment, Mosquera reaffirmed his agreement with the Arbitration Policy.

The most recent reaffirmation was in 2017, where he acknowledged: "I understand that the employment arbitration policy, which is a standalone agreement contained in appendix A, is a binding agreement between Citi and me."

Despite the agreement to arbitrate, Mosquera filed a complaint in Argentina on October 30, 2020. On November 18, 2021, Citbank N.A. filed a Demand for Arbitration with the AAA.

## II. Legal Standard and Analysis

### A. Anti-Suit Injunction

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs. Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). When "a party initiates a foreign suit in an attempt to sidestep arbitration, an anti-suit injunction may be particularly appropriate given the federal policy favoring liberal enforcement of arbitration clauses." *APR Energy, LLC v. First Inv. Grp. Corp.*, 88 F. Supp. 3d 1300, 1322 (M.D. Fla. 2015) (citations omitted).

A district court may issue an anti-suit injunction only if: (1) the parties are the same in both the foreign and domestic actions; and (2) the resolution of the case before the enjoining court is dispositive of the action to be enjoined. *Canon Latin Am. Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 (11th Cir. 2007). The Eleventh Circuit defined "dispositive" to mean "to settle or finish the dispute." *Id.* at n. 8. The district court's order compelling arbitration "disposes of the [foreign] action because the [foreign] litigation concerns issues that, by virtue of the district court's judgment, are reserved to arbitration." *Citibank, N.A. & Sucursal de Citibank, N.A., Establecida en la Republica de Argentina v. Mazza*, No. 19-21216-CIV, Report and Recommendation (D.E. 30 at 12) (quoting *APR Energy, LLC*, 88 F. Supp. 3d at 1320) (additional citations omitted).

Once the two threshold requirements are satisfied, the Court next considers whether additional factors warrant such an injunction. *Canon,* 508 F.3d at 601. "The Eleventh Circuit has not addressed what [specific] factors a district court should consider once the party seeking an anti-suit injunction has satisfied the gatekeeping inquiry." *APR Energy*, 88 F. Supp. 3d at 1321. Some circuits simply require that the "prosecution of simultaneous proceedings would frustrate the speedy and efficient determination of the case." *Id.* Other circuits place greater emphasis on comity. *Id.* Petitioner asserts that under either standard, it meets the requirements for the issuance of an anti-suit injunction.

1. *Identity of Parties*

In the Argentine suit, Mosquera is the plaintiff and Citibank N.A. is the defendant. Likewise, Citibank N.A. is the claimant in the AAA arbitration and Mosquera is the respondent. Petitioner can meet the identity of parties requirement by showing "the real parties in interest here and in the [foreign proceeding] are effectively the same[.]" *APR Energy*, 88 F. Supp. 3d at 1319. This requirement is easily met.

2. *Effect of the Argentine Proceeding*

A petitioner can establish the "dispositive" threshold requirement by demonstrating that resolution of the domestic proceeding will settle or "finish" the foreign proceeding. *Canon*, 508 F.3d at n.8. Applying this second threshold requirement, the court in *APR Energy*, 88 F. Supp. 3d at 1321, held that when claims in a foreign proceeding are subject to arbitration, "an order compelling arbitration would resolve and dispose of the foreign action, and satisfy the second requirement for an anti-suit injunction." *See also, Paramedics*, 369 F.3d at 653 ("In short, the district court's judgment disposes of the [foreign] action because the [foreign] litigation concerns issues that, by virtue of the district court's judgment, are reserved to arbitration."). An order compelling arbitration here would dispose of Mosquera's Argentine case, which raises

employment claims that he agreed to decide in arbitration. The second requirement for an anti-suit injunction is also met.

### 3. *Public Policy Factors*

Although the Eleventh Circuit has not indicated that the Court must consider public policy factors before issuing an injunction, the Court will consider them in this case. Following the "conservative approach" of courts that apply the public policy factors, there are five to consider. The five factors are: (1) whether Mosquera's litigation in Argentina would violate a policy of this forum; (2) whether the foreign litigation would be vexatious; (3) whether the foreign litigation would cause delay, expense, inconvenience, or a race to judgment; (4) whether arbitrating this dispute would be consistent with principles of international comity; and (v) whether any equitable considerations favor litigating this matter in Argentina. *See China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987); *see generally, Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984).

An examination of these factors favors a ruling in favor of Citibank. First, there is a strong federal policy favoring arbitration, and this factor is significant. *Id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Because of this strong federal policy, "where a party initiates a foreign suit in an attempt to sidestep arbitration, an anti-suit injunction may be particularly appropriate." *APR Energy*, 88 F. Supp. 3d at 1322 (citations omitted). Allowing Mosquera to litigate his arbitrable claims in Argentina runs afoul of this strong federal policy. Therefore, this factor favors issuance of an anti-suit injunction.

The other factors also favor an anti-suit injunction. First, the Argentine litigation is vexatious, as Mosquera reaffirmed his agreement to arbitrate employment claims in his Separation Agreement, and his Argentine case asserts a claim for additional severance pay. *See Alstom Chile, S.A. v. Mapfre Compania de Seguros Generales Chile, S.A.*, No. 13-2416 LTS

DCF, 2013 WL 5863547, at *4 (S.D.N.Y. Oct. 31, 2013) (explaining that requiring petitioners to "litigate the same issues simultaneously on two continents would, in light of the mandatory arbitration provision, be vexatious."). Second, litigation in Argentina in conjunction with an arbitration proceeding on the same issues could lead to inconsistent results, delay, and increased costs. Third, an anti-suit injunction would not offend any Argentine interest since Mosquera agreed to resolve disputes in Florida and in arbitration. At no point did the parties agree that Argentine law would govern an employment dispute. *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1258 (11th Cir. 2006) (stating that an important consideration in comity analysis is whether foreign law applies to the dispute). Finally, because the parties agreed to arbitrate claims in Florida relating to Mosquera's employment with an American company, there is no equitable reason the case should proceed in Argentina. Accordingly, the Court finds these additional factors also favor awarding Petitioner an anti-suit injunction.

### B. Motion to Compel Arbitration

Having found that an anti-suit injunction is appropriate, the Court must next decide whether to compel the claims to arbitration. Section 4 of the Federal Arbitration Act permits a court to compel arbitration where one party has failed, neglected or refused to comply with an arbitration provision. 9 U.S.C. § 4. Where the court finds that a valid arbitration agreement exists between the parties, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* The Federal Arbitration Act "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Courts use a two-step inquiry to determine whether to compel arbitration. First, the Court must determine whether the parties agreed to arbitrate the dispute. *Klay v. All Defendants*, 389

F.3d 1191, 1200 (11th Cir. 2004). The second step requires a court to determine if "Congress has clearly expressed an intention to preclude arbitration of [a] statutory claim." *Augustin v. Cubesmart, L.P.*, No. 18-61918-CIV-Dimitrouleas, 2018 WL 6198369, at *2 (S.D. Fla. Nov. 15, 2018) (quoting *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002)). Here, both inquiries result in an order compelling arbitration. There is an agreement to arbitrate Mosquera's claims relating to his employment and there is no statutory claim in play as Congress has not precluded from arbitration disputes related to the payment of severance after an employee has been terminated. There are no legal restraints that preclude arbitration and to reiterate, the Federal Arbitration Act does not give this Court discretion. Rather, the Court must order the parties to arbitrate when there is an agreement to do so. *Dean Witter*, 470 U.S. at 218. Accordingly, as the Respondent is refusing to comply with an enforceable arbitration agreement, the motion to compel arbitration is granted.

*C. Temporary Restraining Order*

Petitioner also seeks a temporary restraining order under Federal Rule of Civil Procedure 65. Because the Court is ordering an anti-suit injunction, the request for a temporary restraining order is denied as moot. The Respondent is enjoined from continuing to litigate in the Argentine Court and the matter is compelled to arbitration.

DONE AND ORDERED in Chambers at Miami, Florida, this 21st of July 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record